**The STATE of Ohio, Appellee,**

**v.**

**MANNING, Appellant.**

[Cite as *State v. Manning* (1991), 74 Ohio App.3d 19.]

Court of Appeals of Ohio,
Lorain County.

No. 90CA004871.

Decided May 8, 1991.

20

22

*Gregory A. White*, Prosecuting Attorney, for appellee.

*Jack W. Bradley*, for appellant.

REECE, Judge.

Defendant-appellant, Ginger A. Manning, shot and killed her husband, Todd Manning, as he slept during the early morning hours of March 8, 1990. She was convicted of murder, R.C. 2903.02(A), with a firearm specification, R.C. 2929.71, in the Lorain County Court of Common Pleas. Manning now appeals, raising eleven assignments of error.

In January 1990, Ginger Manning learned that Lorain County Children Services had received a report that Todd Manning had molested her daughter, Jennifer. Todd was not the biological father of the five-year-old. He was forced to leave her trailer but returned after convincing her of his innocence. Ginger Manning contended at trial that Todd Manning admitted to the incident on the night of his death. She attempted to call the police, but he threatened to kill both her and her daughter if she did.

Ginger Manning maintained further that she lay in bed for a while with Jennifer. She then got up, opened a beer, and watched television with Todd until he fell asleep. At this point, she retrieved her gun from the bedroom, went into the kitchen to load it, and returned to the living room. She began to recall the many instances of abuse, she alleged, and grew fearful for her and Jennifer's safety. Ginger Manning then pointed her gun at Todd's right temple and fired a single bullet through his head. He survived for approximately thirty-six hours before expiring from the severe wound.

Ginger Manning promptly called the police and reported the incident. During the investigation, she claimed she had banished Todd Manning from the trailer but he had broken in while she was asleep. Mistaking him for a common intruder lying on her sofa, she shot him.

Numerous discrepancies in Manning's initial account quickly surfaced. Consequently, she was indicted for aggravated murder, R.C. 2903.01(A), with a gun specification, on March 13, 1990. After a five-day trial, the jury returned a conviction for the lesser offense of murder, R.C. 2903.02. This appeal raising eleven assignments of error followed.

## Assignment of Error I

"The trial court erred in ordering appellant to submit to an examination by the State's expert in violation of her constitutional rights against self-incrimination."

Early in pretrial proceedings, it became apparent that Manning was going to abandon her defense of mistake and contend instead that she was a victim of battered woman syndrome. Manning's counsel expressed an intention to have an expert examine her and testify on this issue. A hearing followed on

June 4, 1990, during which the prosecutor requested that any such testimony be excluded since prepared reports had not been submitted by the defense in compliance with a prior discovery order. In the ensuing discussion, Manning's counsel declared that an independent examination by a state psychiatrist would be acceptable if the date for filing the overdue report could be continued. This request was granted by the court.

In a brief to the court dated June 15, 1990, Manning's counsel switched positions and maintained that such an examination would violate her constitutional guarantee against self-incrimination. This argument was rejected on the grounds that any such rights were waived. On June 21, 1990, Manning was transported to Cleveland for an interview with Phillip J. Resnick, M.D. Prior to this psychiatrist's testimony at trial, the objection was again raised and overruled by the court. Manning now complains that these rulings were erroneous.

In *State v. Koss* (1990), 49 Ohio St.3d 213, 551 N.E.2d 970, paragraph three of the syllabus, the Supreme Court of Ohio held that expert testimony regarding the battered woman syndrome could assist the trier of fact in resolving a claim of self-defense. Such assessments are important in determining whether the defendant possessed the appropriate mental state to justify an acquittal. *Id.* at 215–218, 551 N.E.2d at 972–975. The Ohio General Assembly recently endowed this ruling with statutory force. R.C. 2901.06.

During the defense case, Lynne B. Rosewater, Ph.D., testified that she believed that Manning was in fear of imminent bodily harm to either herself or Jennifer at the time she shot Todd Manning. The prosecutor then presented Dr. Resnick's contrary evaluation in rebuttal. When a defendant introduces psychiatric evidence and places her state of mind directly at issue, as here, she can be compelled to submit to a independent examination by a state psychiatrist. See *Buchanan v. Kentucky* (1987), 483 U.S. 402, 422–424, 107 S.Ct. 2906, 2917–2919, 97 L.Ed.2d 336, 355; *Isley v. Dugger* (C.A. 11, 1989), 877 F.2d 47, 49; *Silagy v. Peters* (C.A. 7, 1990), 905 F.2d 986, 1005. One court has reasoned that:

" * * * It is unfair and improper to allow a defendant to introduce favorable psychological testimony and then prevent the prosecution from resorting to the most effective and in most instances the only means of rebuttal: other psychological testimony. The principle also rests on 'the need to prevent fraudulent mental defenses.' " *Schneider v. Lynaugh* (C.A. 5, 1988), 835 F.2d 570, 576.

While these opinions do not involve the specific issue of battered woman syndrome, the general principles announced are no less applicable. Conse-

quently, Manning's Fifth Amendment rights against self-incrimination were waived and the admission of Dr. Resnick's testimony was proper. This assignment of error is overruled.

### Assignment of Error II

"The trial court erred in finding that the state's expert was qualified as an expert regarding the 'battered woman's syndrome.'"

Manning's counsel does not suggest, and we are unable to confirm, that an objection was ever raised as Dr. Resnick testified as an expert witness. Therefore, this court need not review the matter for the first time on appeal. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus; *State v. Self* (1990), 56 Ohio St.3d 73, 81, 564 N.E.2d 446, 454.

██ Regardless, the trial court did not abuse its discretion by allowing Dr. Resnick to render an expert opinion. See *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 58 O.O. 179, 131 N.E.2d 397, paragraph eight of the syllabus. His qualifications as a criminal psychiatrist were extensive. The jury was fully apprised of the differences between his and Dr. Rosewater's backgrounds and could determine on its own how much weight to afford each. This assignment of error is not well taken.

### Assignment of Error III

"The prosecutor engaged in improper conduct during the trial by inquiring of the victim's father, of a case worker from Lorain County Children Services, and of a police detective concerning a polygraph examination taken by the victim. The trial court further erred by permitting the testimony over objection."

██ Objections were raised when a caseworker from Lorain County Children's Services, Holly Croyle, and a Coshocton County Detective, Al Lingo, were permitted to testify that Todd Manning had undergone a lie detector test which indicated that he had not molested Jennifer. The decisions cited by Ginger Manning to this court in support of her argument all concern the admissibility of lie detector tests taken either by the accused, *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, or a party, *Brown v. Best Products Co.* (1985), 18 Ohio St.3d 32, 35–36, 18 OBR 69, 72–73, 479 N.E.2d 852, 855–856.

The Supreme Court of Ohio recently distinguished that line of opinions by noting that in those cases polygraph evidence was offered to corroborate or impeach trial testimony. *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 86, 564 N.E.2d 440, 444. In *Criss*, the court held that police officers

defending against a civil claim of malicious prosecution should have been allowed to present polygraph results on their behalf. The test subjects were state witnesses in rape proceedings against the plaintiffs. The evidence was admissible not to challenge or support the veracity of the witnesses' testimony but to demonstrate the officer's state of mind during the plaintiffs' arrest. *Id.* at 86–87, 564 N.E.2d at 444–445.

A similar conclusion is warranted in the case at bar. The results of Todd Manning's polygraph test were offered to demonstrate that Ginger Manning had reason to believe he had not, in fact, molested her daughter. The trial judge did not abuse his discretion by concluding that such testimony was relevant to rebut her claim of self-defense. Evid.R. 401, 402; see, generally, *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281. Accordingly, we also overrule the third assignment of error.

### Assignment of Error IV

"The trial court erred in permitting the victim's mother to describe nude photographs of appellant, admitting the photographs into evidence and admitting into evidence a photograph of appellant seated at her kitchen table."

The prosecution maintained at trial that Ginger Manning's motive for shooting Todd Manning was based, in part, upon his possession of these unflattering photographs and her fear that he would use them against her. Several witnesses testified in support of this theory. These exhibits were therefore relevant in accordance with Evid.R. 401 and 402. Moreover, we cannot agree that the trial court abused its discretion by concluding that their probative value outweighed the prejudicial effect as urged by counsel. Evid.R. 403; see *State v. Maurer* (1984), 15 Ohio St.3d 239, 264–266, 15 OBR 379, 400–403, 473 N.E.2d 768, 790–793. This assignment of error is without merit.

### Assignment of Error V

"The trial court erred in not permitting appellant to introduce the records of the victim's conviction for domestic violence in the Coshocton Municipal Court into evidence and by not permitting appellant to testify as to the reason she was seeking a warrant for the victim's arrest in the state of Tennessee."

Ginger Manning was permitted to present substantial evidence indicating she was aware that Todd Manning was an abusive individual. Many specific instances of misconduct were described by several witnesses consistent with Evid.R. 404(B). She claims error, nevertheless, in the trial court's refusal to allow her to (1) present records of Todd's prior conviction in the

Coshocton Municipal Court for domestic violence, and (2) discuss an arrest warrant she sought against him in Tennessee in response to a similar incident.

Ginger Manning notes correctly that the general prohibition against character evidence does not preclude her from addressing her perception of Todd Manning's propensity for violence as part of her claim of self-defense. Evid.R. 404(A)(2) and 404(B). She erroneously reasons, however, that Evid.R. 405(B) provides an unconditional right to prove such a propensity with evidence of prior criminal proceedings against Todd. That provision states simply:

"In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

The character of the victim is not an "essential element" of the claim of self-defense as Evid.R. 405(B) demands. While Manning's subjective fear for both her and her daughter's safety is directly pertinent, *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus, there is no requirement that the victim exhibit an objective propensity for violence. Her resort to Evid.R. 405(B) is thus misplaced.

Consequently, the evidence Manning was not allowed to present, *i.e.*, specific criminal proceedings against Todd, is not required to be admitted by either rule or statute. A judge could properly determine that an excursion into such would only distract the jury from the critical question of Manning's guilt or innocence. See *State v. Steen* (1990), 1 AOA 225, 228, 1990 WL 10961. This assignment of error is overruled.

### Assignment of Error VI

"The trial court erred in granting the State's *ex parte* request for appellant's military records."

Manning's argument under this assignment of error is twofold. The initial contention is that the court wrongfully ordered the Director of National Personnel Records, upon motion by the prosecutor, to release to the state all reports from her two years of military service. Her brief to this court makes no attempt to logically explain why·such a procedural error—if found—would warrant a new trial. The order was clearly predicated upon the court's inherent authority to regulate discovery proceedings. See, generally, *United States v. Gerena* (D.Conn.1987), 116 F.R.D. 596, 598. Manning's counsel was duly afforded an opportunity at trial to examine and object to any reference to the documents. Contrary to her suggestions, neither the United States Constitution nor Crim.R. 47—regulating motion practice—require notice and a formal hearing on such matters.

 Manning also insists, as she did at trial, that the prosecutor should not have been allowed to question the defense expert, Dr. Rosewater, on her knowledge of these records. The psychologist was asked whether her opinion would be changed by the fact Ginger had been diagnosed as a chronically violent and resentful schizophrenic. The response was negative. The records were never mentioned specifically by the prosecutor before the jury and were not offered into evidence. Consequently, there was no "testimony" which the physician/patient, R.C. 2317.02(B), and psychologist/patient, R.C. 4732.19, privileges seek to protect. This assignment of error is overruled.

## Assignment of Error VII

"The trial court erred in permitting the prosecutor to call rebuttal witnesses to establish that appellant had a propensity to act violently in violation of Evidence Rule 404(B)."

 While the general rule is that character evidence is not admissible to prove conformity therewith, the accused is always free to offer such on her behalf. Evid.R. 404(A)(1). Defense witnesses Randy Hudgins, Helen Luther, Karen Bodnar, Wayne Heikila, and Vivian Carpenter all testified that Manning was quiet, timid, and nonviolent. Consequently, the prosecution was entitled, by authority of the same rule, to rebut these characterizations with evidence of the defendant's violent past. See *State v. Hale* (1969), 21 Ohio App.2d 207, 213–214, 50 O.O.2d 340, 343–344, 256 N.E.2d 239, 243–244. This assignment of error is not well taken.

## Assignment of Error VIII

"The trial court erred in denying the defense an *in camera* inspection of taped statements made by a witness."

 In early 1990, an acquaintance of the Mannings, Bradley Christian, was suspected by the Coshocton County Sheriff's Department of molesting Jennifer. As part of the investigation, Todd Manning surreptitiously recorded a conversation he had with Christian about the alleged incident. During Ginger Manning's trial, Christian was called as a prosecution witness to rebut the defense testimony of her good character. Ginger Manning's counsel expressed a desire, prior to cross-examination, to be allowed to examine the tapes from the Coshocton County investigation to determine if they could be used to impeach Christian. Error is now assigned to the court's refusal to grant this request.

Crim.R. 16(B)(1)(g) sets forth a procedure for *in camera* inspection of witness statements and disclosure to counsel of any apparent inconsistencies. See *State v. Daniels* (1982), 1 Ohio St.3d 69, 1 OBR 109, 437 N.E.2d 1186.

The last paragraph of the rule requires that whenever the defense is not provided with the entire statement, as here, it must be preserved in the record for appeal. Since Manning neglected to do so and the recordings are not before us, we have no way to determine whether they did, in fact, contain apparent inconsistencies. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 226, 15 OBR 311, 364, 473 N.E.2d 264, 316. We therefore overrule this assignment of error.

### Assignment of Error IX

"The trial court erred in refusing to permit the defense to inspect taped statements to allow a proffer of those tapes for purposes of appellate review; and, to declare a mistrial for the state's failure to provide copies of the statements to the defense."

In rebuttal, Detective Lingo was called by the state to testify that, upon his investigation, he did not believe Todd Manning had molested Jennifer and he had informed Ginger Manning of this conclusion prior to the shooting. The detective indicated that he had spoken with her approximately three times in the early part of March. On cross-examination, counsel pressed Detective Lingo on the precise dates of the conversations and the witness conceded that he could not recall exactly what took place on what day. The prosecutor, on re-direct, then inquired as to whether the detective had reviewed the police recordings of the phone calls prior to testifying. He explained that he had and as a result was able to confirm that a discussion concerning Todd Manning's innocence took place on March 7, 1990.

Counsel objected on two grounds. He complained that despite his discovery demand, he was never provided with a copy of this recorded conversation between Detective Lingo and Ginger Manning. A declaration of mistrial was the only remedy proposed. He also requested an opportunity to review the tape to enable him to cross-examine the witness about it. The trial court overruled the objection and the issue is now before us on appeal.

In contrast to the recorded statements made by Christian, counsel did, on this occasion, request that the police tapes be preserved in the record for appeal. The court rejected this plea as well. We therefore must determine whether these decisions were correct, regardless of the precise details of the conversation.

Turning to the question of Manning's right to discovery, it is well settled that the prosecution must disclose evidence favorable to the defendant upon request. *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215. Nevertheless, "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey* (1977), 429 U.S. 545,

559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 42. The Due Process Clause requires little in regard to the amount of discovery which must be afforded the parties. *Wardius v. Oregon* (1973), 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82, 87. Accordingly, the trial court should be afforded substantial deference in the regulation of discovery proceedings. *State v. Laskey* (1970), 21 Ohio St.2d 187, 192, 50 O.O.2d 432, 434, 257 N.E.2d 65, 68.

Crim.R. 16(B)(1)(a)(i) requires disclosure of *relevant* recorded statements. *State v. Moore* (1988), 40 Ohio St.3d 63, 65, 531 N.E.2d 691, 693. The connection between the trial at hand and the police tapes obtained during a completely separate investigation of child molesting in a distant county was not apparent at the time discovery materials were to be exchanged. The conversation did not become pertinent, if at all, until defense counsel questioned Detective Lingo on the precise date he informed Ginger Manning that he no longer believed Todd molested Jennifer. The instant case is therefore distinguishable from that cited by Manning, *State v. Tomblin* (1981), 3 Ohio App.3d 17, 3 OBR 18, 443 N.E.2d 529. The trial court did not err in declining to grant a mistrial in this instance. See *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 5, 511 N.E.2d 1138, 1141.

Regarding the matter of Manning's right to review the tapes prior to cross-examination of Detective Lingo, no authorities are cited to support this proposition. It is noted that Evid.R. 612, dealing with witness memory refreshed, pertains to "writings." 1 Weissenberger, Ohio Evidence (1991), Section 612.1. This question is left to the trial judge's sound discretion.

Even when giving Manning the benefit of any doubt, we cannot conclude that withholding the recorded statements prejudiced the defense. The brief discussion concerning the detective's findings shows they were, if anything, inconsistent with Manning's claim of self-defense. Counsel chose not to question either Detective Lingo or Manning (who also testified) about any particulars of the conversation. The detective referred to the tape simply to clarify the date involved and it was never admitted into evidence. As noted in an analogous case, "litigation practicalities preclude the production of everything which may have triggered some part of a witness's recollection." *State v. Byrd* (1987), 35 Ohio App.3d 100, 101, 519 N.E.2d 852, 855. The trial judge did not abuse his discretion by choosing to proceed with trial. This assignment of error is overruled.

### Assignment of Error X

"The trial court erred in not instructing the jury on the lesser included offense of voluntary manslaughter."

▮ Voluntary manslaughter is defined by R.C. 2903.03(A), which provides:

"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

As originally enacted, the statute employed the phrase "while under extreme emotional stress" instead of "while under the influence of sudden fit of rage." Section 1, Am.Sub.H.B. No. 511 (134 Ohio Laws, Part II, 1866, 1901). The General Assembly's 1982 revisions therefore serve to place special emphasis upon the requirement of "suddenness."

After all the evidence was presented, it was undisputed that Ginger Manning shot Todd Manning as he slept, several hours after their final alleged altercation. A reasonable jury could not have found that her passion or rage was sudden. While these emotions supposedly culminated during the course of the evening, Manning had ample opportunity, by her own testimony, to settle down and reflect as Todd lay on the sofa. Consequently, she was not entitled to an instruction on voluntary manslaughter. *State v. Pierce* (1980), 64 Ohio St.2d 281, 284, 18 O.O.3d 466, 467, 414 N.E.2d 1038, 1040; *State v. Dudukovich* (June 10, 1987), Lorain App. No. 4164, unreported, 1987 WL 12880. This assignment of error is overruled.

### Assignment of Error XI

"The trial court erred by permitting the jury to consider an incorrect definition of the battered woman's syndrome and did not properly instruct the jury on the definition of battered woman's syndrome."

▮ Manning believes the jury should have been instructed that battered woman syndrome arises whenever a battered woman experiences a sudden flashback triggering an immediate fear of danger causing her to respond instinctively in self-defense. This expanded definition does not, however, accurately reflect the law of this state. In *Koss, supra,* 49 Ohio St.3d 213, 551 N.E.2d 970, paragraph three of the syllabus, the Supreme Court clarified that battered woman syndrome is not a new defense or justification, as Manning's definition suggests, but simply an extended application of the traditional claim of self-defense. Consistent with the instructions proposed by Manning's counsel, the judge charged the jury with the three long-accepted elements of self-defense: the defendant (1) was not at fault in creating her predicament, (2) had a bona fide belief that she was in imminent danger of death or great bodily harm which could only be forestalled by a resort to

deadly force, and (3) did not violate any duty to retreat or avoid the danger. *Robbins, supra,* paragraph two of the syllabus.

The thrust of *Koss* is that a defendant, who establishes herself as a battered woman, may present expert testimony "to assist the trier of fact in determining whether * * * [she] acted out of an honest belief that she was in imminent danger of death or great bodily harm and that the use of such force was her only means of escape." *Koss, supra,* 49 Ohio St.3d at 217, 551 N.E.2d at 974. The Supreme Court did not attempt, contrary to contentions by Manning's counsel, to write a legal definition of battered woman syndrome. Significantly, the General Assembly codified this same standard in R.C. 2901.06(B) (effective November 5, 1990).

In regard to the proper scope of jury instructions, the Ohio Supreme Court has warned that:

"We emphatically remind trial courts that they should limit definitions, where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." *State v. Williams* (1988), 38 Ohio St.3d 346, 356, 528 N.E.2d 910, 921, fn. 14.

Consequently, amplification of statutory decrees is generally inadvisable. *State v. Mahoney* (1986), 34 Ohio App.3d 114, 119, 517 N.E.2d 957, 962. Since this state has not yet adopted the expanded definition of battered woman syndrome proposed by the defense, either legislatively or judicially, the trial court properly declined to instruct the jury to that effect.

For the most part, the judge's charge to the jury was substantially similar to that offered by Manning's counsel. However, the following portion of her proposed instructions was purposely excluded:

" * * * The battered woman syndrome is a matter of commonly accepted scientific knowledge and the court has allowed testimony about it. The subject matter and details of the battered woman syndrome is [*sic* ] not within the general understanding or experience of a person who is a member of the general populace, and as such is not within the field of common knowledge. This testimony on the battered woman syndrome is presented to assist in dispelling the common perception that a woman in a battering relationship is free to leave at any time. This testimony will counter any pre-existing conclusions you may have that if Defendant's beatings were really that bad she would have left her husband much earlier. Any misconceptions that you may have regarding battered women must be put to rest, including the popular belief that battered women are masochistic and enjoy the beatings and that they intentionally provoke their husbands into fits of rage."

The first two sentences of these instructions are irrelevant to the jury's deliberations and pertain strictly to evidentiary issues. The remainder of the charge concerns conclusions which may be the subject of expert testimony but have not been adopted into the laws of Ohio. This final assignment of error is overruled.

The judgment of the trial court is affirmed in all respects.

*Judgment affirmed.*

BAIRD, P.J., and COOK, J., concur.