**The STATE of Ohio, Appellee,**

**v.**

**ADAMS, Appellant.**

[Cite as *State v. Adams* (1991), 74 Ohio App.3d 140.]

Court of Appeals of Ohio,
Lorain County.

No. 90CA004889.

Decided May 15, 1991.

*Gregory A. White,* for appellee.

*Hollace B. Weizel,* for appellant.

---

COOK, Judge.

Defendant Arlie Wayne Adams appeals from his conviction by jury of one count of attempted aggravated burglary, in violation of R.C. 2923.02(A) and 2911.11(A)(3). We affirm.

Adams was charged with breaking and entering in violation of R.C. 2911.-13(A) and attempted aggravated burglary in violation of R.C. 2923.02(A) and 2911.11(A)(3), involving the home of James and Kathleen Dick, located in North Ridgeville, Lorain County, Ohio. At the time of the alleged crimes, the house was in a state of disrepair due to smoke damage. Although the residents lived elsewhere for several weeks during the cleaning and repair, periodically James Dick would go to his home to survey the house and monitor the work.

On one such occasion, while at the house, Dick observed someone fleeing from a utility shed located on the property. Several days later, on another visit to the house, Dick witnessed two people attempting to enter the residence through a side window. After giving pursuit, Dick identified one of the intruders as the same person he had observed several days earlier trespassing on his property. The perpetrator in both instances was later identified by Dick as defendant Adams.

The jury acquitted Adams of the breaking and entering charge in connection with the utility shed, and found him guilty of the attempted aggravated burglary charge relating to the residence. Adams was accordingly sentenced and now presents three assignments of error on appeal.

### Assignment of Error I

"The trial court erred to the prejudice of appellant, when it denied appellant's request for an instruction on a lesser included offense."

Adams claims the trial court erred in failing to give an instruction on the lesser included offense of attempted breaking and entering on the attempted aggravated burglary charge. We disagree.

In *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311, the Supreme Court of Ohio set forth a two-prong test to determine whether an instruction on a lesser included offense is warranted pursuant to Crim.R. 31(C) and R.C. 2945.74, as follows:

"Thus the trial court's task is two fold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." *Id.* at 280, 513 N.E.2d at 313.

 Breaking and entering, in this case, is a lesser included offense of aggravated burglary, as the crime of breaking and entering contains elements identical to or contained within the crime of aggravated burglary without the aggravating element of an occupied structure. *Id.* at 280, 513 N.E.2d at 313; *State v. Moon* (July 6, 1982), Montgomery App. No. 7614, unreported; see also, Committee Comment to R.C. 2911.13. Because breaking and entering is a lesser included offense of aggravated burglary, in this case, then attempted breaking and entering is a lesser included offense of the charge of attempted aggravated burglary contained in the indictment.

We now apply the second prong of the *Kidder* test to determine whether a reasonable juror could conclude that the evidence presented supports a conviction for the lesser offense and not the greater. *Kidder, supra,* at 280, 513 N.E.2d at 313; *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus.

In this case the trial judge was permitted, at the stage of the trial when he had heard the evidence and was determining which instructions should be given, to make the determination that because the evidence clearly showed this was a house maintained as a permanent dwelling, even though temporarily unoccupied [R.C. 2909.01(A)], no reasonable jury could conclude that this structure was unoccupied. Although a trial judge is not permitted to withdraw from jury consideration any essential element of a crime, the judicial analysis at the instruction stage of the trial is different.

 In determining whether to give a requested instruction on a lesser included offense, the court can find that a particular view of the evidence necessary to find the lesser included offense is unreasonable as a matter of law. *Thomas, supra,* 40 Ohio St.3d at 217, 533 N.E.2d at 290. The holding from the *Thomas* case states that "even though an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *Id.* at 216, 533 N.E.2d at 289; *State v. Yeager* (Apr. 10, 1991), Wayne App. No. 2593, unreported, 1991 WL 57339.

 Here the trial judge found that the evidence could not reasonably support an acquittal on aggravated burglary and a conviction on breaking and

entering because there was no evidence that would have reasonably allowed a jury to conclude that the structure was "unoccupied."

Accordingly, appellant's first assignment of error is overruled.

### Assignment of Error II

"The trial court erred to the prejudice of appellant and in violation of rights conferred by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments of the Constitution of the United States, when it instructed the jury that one of the essential elements of the crime had been established as a matter of law."

The trial court charged the jury on the crime of attempted aggravated burglary as follows:

"The essential elements of the crime of a attempted aggravated burglary as charged in the second count in the indictment are as follows:

"First, the defendant attempted to trespass in an occupied structure;

"Second, by force;

"Third, with the purpose in committing a theft therein; and,

"Fourth, at the time of the trespass, a person was present or likely to be present at or in the occupied structure."

Over defense counsel's objection, the court, in its general instructions to the jury, stated: "You are instructed as a matter of law, that the residence which is involved in this count [attempted aggravated burglary] is an occupied structure."

The Due Process Clause of the Fourteenth Amendment to the United States Constitution denies states the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375. Jury instructions that effectively relieve the state of its burden of persuasion violate a defendant's due process rights. *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39; *Rose v. Clark* (1986), 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460. Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases. *Carella v. California* (1989), 491 U.S. 263, 264, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218, 221.

However, a mandatory jury directive resulting in constitutional error may be harmless error. All such errors are not equivalent to constitutionally impermissible directed verdicts for the state. *Sandstrom, Rose,* and *Carella,*

*supra.* Errors of constitutional dimension do not necessarily require reversal of criminal convictions if the reviewing court can confidently determine from the whole record that the constitutional error was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674.

■ We now turn to the instant case to determine whether the element of "occupied structure" was actually decided by the jury despite the improper jury charge. The jury was instructed that in order to convict Adams of aggravated burglary it must find the aggravating element that "at the time of the trespass a person was present or likely to be present at or in the occupied structure." R.C. 2911.11(A)(3). R.C. 2909.01 offers four separate and distinct definitions of an "occupied structure," one of which defines the structure as one "[i]n which at the time any person is present or likely to be present." R.C. 2909.01(D).

The jury, by virtue of its conviction of the defendant on the attempted aggravated burglary charge, necessarily found beyond a reasonable doubt that "at the time any person is present or likely to be present," thus also satisfying one of the alternative definitions for occupied structure.[1]

Therefore, despite the trial court's impermissible jury directive, the jury independently performed its function by finding, beyond a reasonable doubt, the existence of every material element of the crime. We conclude that the error at issue here was harmless beyond a reasonable doubt.

Accordingly, appellant's second assignment of error is overruled.

## Assignment of Error III

"The trial court erred to the prejudice of appellant when it entered a judgment of conviction, where such judgment was against the manifest weight of the evidence, or in the alternative, the trial court erred in denying appellant's motion for acquittal."

Our review of the record yields sufficient competent and credible evidence related to every element of the crime charged, and in giving all reasonable inferences in weighing the evidence, we cannot say that the jury clearly lost its way so as to create a manifest miscarriage of justice. *State v. Martin*

---

1. As stated, the trial court instructed the jury to find the structure occupied, as a matter of law, without setting forth any specific definition pursuant to R.C. 2909.01.

(1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. The record fully supports the jury's verdict with proof beyond a reasonable doubt.

Accordingly, appellant's third assignment of error is overruled.

*Judgment affirmed.*

BAIRD, P.J., concurs.

REECE, J., dissents.

REECE, Judge, dissenting.

Adams contends in his first assignment of error that he should have been afforded an instruction on the crime of attempted breaking and entering, R.C. 2911.13, in addition to that on attempted aggravated burglary, R.C. 2911.11. I have no quarrel with the majority's determination that the former is a lesser included offense of the latter. However, the facts of this case warranted, in my view, the requested charge.

The pertinent question before this court is whether a reasonable jury *could* acquit the accused of the greater crime but still convict him of the lesser. *State v. Kidder* (1987), 32 Ohio St.3d 279, 281–282, 513 N.E.2d 311, 314–315; *State v. Thomas* (1988), 40 Ohio St.3d 213, 216–217, 533 N.E.2d 286, 289–290. All evidence and inferences must be viewed in a light most favorable to the defendant. *State v. Wilkins* (1980), 64 Ohio St.2d 382, 388, 18 O.O.3d 528, 532, 415 N.E.2d 303, 308; *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 591. This framework, by strong appearances, mirrors the familiar appellate standard used for reviewing whether criminal convictions are supported by sufficient evidence. See, *e.g., State v. Jamison* (1990), 49 Ohio St.3d 182, 191, 552 N.E.2d 180, 188.

In the instant case, the defense focused heavily upon the issue of whether the structure Adams attempted to enter was "occupied." This term is defined by R.C. 2909.01, requiring a careful examination of the particular facts of each case. See *State v. Green* (1984), 18 Ohio App.3d 69, 71–72, 18 OBR 234, 235, 480 N.E.2d 1128, 1131–1132. By James Dick's own testimony, the fire-damaged home was coated with soot, rendering it unlivable until repairs could be made. Indeed, even some of the family's belongings had to be removed and stored in a shed. During the month the building was uninhabited, the Dicks apparently entered it only once to retrieve an alarm clock. While they would sometimes check on it, the testimony does not suggest they did anything more than drive by the structure.

Viewed in a light most favorable to Adams, this evidence presents a close call as to whether the structure was "occupied." A jury *could* reasonably conclude that at the time of the alleged crime, the building was not maintained

as a dwelling, that it was temporarily abandoned (as opposed to merely vacant), and that no one was present or likely to be present inside. *State v. Collier* (1984), 22 Ohio App.3d 25, 30, 22 OBR 100, 106, 488 N.E.2d 887, 892.

In *Thomas, supra,* the Supreme Court did conclude that an instruction on involuntary manslaughter was unwarranted in a prosecution for aggravated murder since the jury could not have reasonably found that the defendant did not intend to commit the crime. *Id.,* 40 Ohio St.3d at 217, 533 N.E.2d at 290. However, that defendant's version of the facts, even if true, would not—*as a matter of law*—have allowed an inference that his conduct was unintentional. *Id.* at 217–218, 533 N.E.2d at 290–291; accord *State v. Manning* (1991), 74 Ohio App.3d 19, 598 N.E.2d 25. In the instant case, by contrast, the trial judge was presented with a legitimate factual dispute as to whether the statutory definition of "occupied structure" was satisfied. He could not have found the evidence did not allow a conviction on the lesser offense of attempted breaking and entering unless he independently *assessed* the witness testimony, applied the facts to the statute, and determined that the prosecution, in his view, had proved this element beyond a reasonable doubt.

In *State v. Wilkins, supra,* 64 Ohio St.2d at 388, 18 O.O.3d at 532, 415 N.E.2d at 308, the court cautioned that:

"The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under *any* reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given." (Emphasis added.) See, also, *State v. Solomon* (1981), 66 Ohio St.2d 214, 221, 20 O.O.3d 213, 218, 421 N.E.2d 139, 143; *State v. Davis* (1983), 6 Ohio St.3d 91, 95, 6 OBR 131, 133, 451 N.E.2d 772, 775. A reasonable—but not exclusive—view of the evidence before us would allow a finding that the structure was unoccupied and, hence, that Adams was guilty of attempted breaking and entering but not attempted aggravated burglary. The trial court's failure to instruct on attempted breaking and entering may thus have forced the jury to improperly convict Adams of aggravated burglary—even if the evidence did not support such—rather than set him free. *State v. Loudermill* (1965), 2 Ohio St.2d 79, 80–83, 31 O.O.2d 60, 60–62, 206 N.E.2d 198, 199–201.

In his second assignment of error, Adams argues, and this court unanimously agrees, that the trial court improperly instructed the jury that "the residence which is involved in this count [attempted aggravated burglary] is an occupied structure." By essentially "directing a verdict" in favor of the prosecution on this element, the judge not only violated Adam's fundamental right to due process of law but also usurped the historical province of the

jury. See *United States v. United States Gypsum Co.* (1978), 438 U.S. 422, 446, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854, 875. Justice White reasoned in *Duncan v. Louisiana* (1968), 391 U.S. 145, 155–156, 88 S.Ct. 1444, 1450–1451, 20 L.Ed.2d 491, 499–500, that:

"The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. *If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.* Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence. * * * " (Footnotes omitted and emphasis added.)

I cannot accept that this manifest error, involving such an elemental aspect of our criminal justice system, may be dismissed under the general principles of harmless error.

Initially, I note that by applying this doctrine to the present case, the majority has broken new ground. The three United States Supreme Court cases cited, *Sandstrom, Rose,* and *Carella, supra,* each involved improper instructions requiring the jury to infer a requisite criminal intent once certain facts were found to exist. While concluding that it was possible for such errors to be harmless beyond a reasonable doubt, the court carefully delineated the unique nature of such charges:

" * * * When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. *Connecticut v. Johnson,* 460 U.S. 73, 96–97, 74 L.Ed.2d 823 [840–841], 103 S.Ct. 969 [982–983] (1983) (Powell, J., dissenting). In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that

the defendant committed the relevant criminal act but did not *intend* to cause injury.... In that event the erroneous instruction is simply superfluous: the jury has found, in Winship's words, 'every fact necessary' to establish every element of the offense beyond a reasonable doubt." *Rose, supra,* [478 U.S.] at 580–581, 92 L.Ed.2d 460 [471–473], 106 S.Ct. 3101 [3107–3108] (footnote and citations omitted). * * *" *Carella, supra,* 491 U.S. at 266, 109 S.Ct. at 2421, 105 L.Ed.2d at 222.

We are presented today with a completely different species of error. The jury was instructed—not to presume a mental state from its independent findings of fact—but to conclusively accept as true a material element of the crime charged. Recognizing this distinction, the Supreme Court warned in *Rose, supra,* 478 U.S. at 578, 106 S.Ct. at 3106, 92 L.Ed.2d at 470, that:

"[H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury. We have stated that 'a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelmingly the evidence may point in that direction.' *United States v. Martin Linen Supply Co.* 430 U.S. 564, 572–573, 51 L.Ed.2d 642 [651–652], 97 S.Ct. 1349 [1355–1356] (1977) (citations omitted). Accord, *Carpenters v. United States,* 330 U.S. 395, 408, 91 L.Ed. 973 [985], 67 S.Ct. 775 [782] (1947). This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. See *Duncan v. Louisiana,* [*supra.*] Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judge the defendant guilty." See, also, *Carella, supra,* 491 U.S. at 265, 109 S.Ct. at 2420, 105 L.Ed.2d at 222. I agree with Judge Boggs, who wrote:

"*Rose v. Clark* stands for the proposition that 'when an instruction prevents the jury from considering a material issue, it is equivalent to a directed verdict on that issue and therefore cannot be considered harmless.' *Hoover v. Garfield Heights Municipal Court,* 802 F.2d 168, 177 (6th Cir.1986), *cert. denied,* [480] U.S. [949], 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987). In that event, the jury is prevented from carrying out its historic duty of finding beyond a reasonable doubt the facts supporting every essential element of the offense. 'The harmless-error doctrine may enable a court to remove a taint from proceedings in order to *preserve* a jury's findings, but it cannot constitutionally *supplement* those findings.' *Pope v. Illinois* [481 U.S. 497, 509, 107 S.Ct. 1918, 1925, 95 L.Ed.2d 439, 450 (1987) (Stevens, J., dissenting)]." *United States v. Mentz* (C.A.6, 1988), 840 F.2d 315, 324.

We should not strain to apply the harmless error doctrine in a manner which other courts have traditionally avoided.

Regardless, I am not convinced that this error was harmless beyond a reasonable doubt. The majority posits that the court's improper instruction regarding the element of "occupied structure," R.C. 2909.01, was cured by the jury's further finding that the "occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present," R.C. 2911.11(A)(3). Adams could not have been convicted of attempted aggravated burglary unless the jury, as instructed, reached this latter conclusion.

In order for this theory to guarantee that the trial court's error was harmless, it is absolutely essential that the jury *freely* determined, beyond a reasonable doubt, that people were "present or likely to be present" in the Dicks' home at the time of the alleged attempted burglary. I do not share the majority's conclusion that the jury separately and independently examined this latter element which is tightly intertwined with the first. It is quite possible—even probable—that when instructed by the court that "the residence which is involved in this count is an occupied structure," the jury naturally inferred from this inappropriate declaration that people were "present or likely to be present" therein. As already noted, substantial evidence was offered upon both sides of this question of fact. Even a careful jury attempting to resolve this dispute could, all too easily, take the proclamation that the home was "occupied" to also mean that inhabitants were "likely to be present" for purposes of R.C. 2911.11(A)(3).

The danger that the jurors may have strayed from the facts and relied instead on the court's misstatement is particularly grave since the "influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" *Quercia v. United States* (1932), 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321, 1323, quoting *Starr v. United States* (1894), 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841, 845. I need not speculate upon the precise probability that the court's erroneous instruction addressing occupancy did indeed influence the jury's determination regarding the presence of people in the structure. Since it is clear to me that, at the very least, there exists a reasonable possibility of such, I cannot find the error harmless beyond a reasonable doubt.

The trial judge's improper instruction was especially damaging to the fair trial process in light of his earlier refusal to charge the jury with the lesser included offense of breaking and entering. These two directives left Adams without any legitimate means of addressing the "occupied structure" element

of the attempted aggravated burglary charge. While the majority has determined, after the fact, that the issue was actually before the jury in a related context, it is simply unfair for us to expect that defense counsel should have recognized such a situation and tailored his arguments accordingly. Indeed, even the prosecutor, in his arguments and brief on appeal, overlooked the specific rationale adopted by the majority of its own volition.

In sum, the harmless error rule is a useful means of assuring that "unimportant and insignificant" errors of a constitutional dimension do not require a reversal of a conviction upon technical grounds. *Chapman, supra,* 386 U.S. at 21, 87 S.Ct. at 826, 17 L.Ed.2d at 709. The doctrine thus "promotes public respect for the criminal process[.]" *State v. Williams* (1988), 38 Ohio St.3d 346, 349, 528 N.E.2d 910, 915. I fear in this case, however, the majority has employed the harmless error rule in a convenient fashion to forgive an elementary and egregious violation of an accused's right to a trial by a jury of his peers.

Finally, the fact remains that the jurors, if they chose to do so, had the power and the right to arrive at inconsistent findings on the elements in question which could have resulted in a verdict of guilty on the lesser charge, or an acquittal if they had no other choice. See *State v. Small* (Feb. 25, 1976), Summit App. No. 7741, unreported.

For these reasons, I would sustain the first and second assignments of error, reverse the conviction, and order that Adams be retried. I express no opinion as to the third assignment of error.