[Cite as *State v. Pilkington*, 2018-Ohio-1912.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

      v.

BRITTANY R. PILKINGTON,

      DEFENDANT-APPELLANT.

CASE NO. 8-17-38

O P I N I O N

Appeal from Logan County Common Pleas Court
Trial Court No. CR 15 08 0225

**Judgment Affirmed**

**Date of Decision:  May 14, 2018**

APPEARANCES:

    *Marc S. Triplett, Tina McFall and Kort Gatterdam* **for Appellant**

    *Eric C. Stewart* **for Appellee**

**WILLAMOWSKI, P.J.**

{**¶1**} Defendant-appellant Brittany R. Pilkington ("Pilkington") brings this appeal from the judgment of the Court of Common Pleas of Logan County ordering her to submit to a psychological evaluation. Pilkington challenges the judgment on the grounds that it violates her constitutional rights. For the reasons set forth below, the judgment is affirmed.

{**¶2**} On August 25, 2015, the Logan County Grand Jury indicted Pilkington on three counts of aggravated murder, each with two death penalty specifications. Doc. 1. Pilkington filed a motion to suppress her prior statements on April 1, 2016. Doc. 201. A continuance of the suppression hearing was granted on July 19, 2016, with the hearing being set to occur in October of 2016. Doc. 238. On October 11, 2016, Pilkington filed a supplement to her motion to suppress raising additional arguments. Doc. 263. The hearing was held on October 18 and 19, 2016. Doc. 287. The State then filed it response on October 24, 2016 to the motion to suppress. Doc. 274. Pilkington filed her rebuttal to the State's response on October 28, 2016. Doc. 275. The trial court ruled on the motion to suppress on November 18, 2016. Doc. 287. The trial court found that in this case, "the interrogations were objectively coercive police activity. *Id*. at 3. The trial court based this upon the length of the interrogations, the way Pilkington was treated by the officers, and the fact that requests by Pilkington to speak to her mental health counselor were ignored. *Id*. However, the trial court determined that although there was hearsay testimony

-2-

regarding Pilkington's limited mental abilities, there was no direct evidence that her will was overborn. *Id*. at 4-5. The trial court then denied the motion to suppress. *Id*. at 5.

{¶3} On July 10, 2017, Pilkington filed a motion to reopen the evidence and present a second supplement to the motion to suppress her statements given to the police. Doc. 343. The motion was based upon the opinions of experts after additional psychological and neuropsychological evaluations. *Id*. The State filed its response to the motion on July 31, 2017. Doc. 345. Pilkington's rebuttal to the State's response was filed on August 7, 2017. Doc. 346. On August 10, 2017, the trial court granted Pilkington's request. Doc. 347.

{¶4} On August 21, 2017, a status conference was held. Doc. 352. At that hearing, the parties discussed having Pilkington evaluated by the State's expert. *Id*. The trial court granted the State leave to file a motion. *Id*. On September 6, 2017, the State filed its motion to have Pilkington evaluated for her competency to waive her Miranda Rights, an IQ test, and any other evaluations deemed necessary. Doc. 353. Pilkington filed her memorandum in opposition to the State's motion on September 12, 2017. Doc. 354. On September 14, 2017, the trial court determined that since Pilkington's state of mind had been made an issue by the defense, the State was entitled to an independent evaluation. Doc. 356. However, the trial court ordered that the "evaluator shall not ask any questions regarding the facts and circumstances of the alleged offenses." *Id*. at 2. On September 27, 2017, the trial

court ordered Pilkington to "submit to a psychological evaluation to address her competency to waive Miranda rights on August 18, 2015, the voluntariness of her statements to law enforcement on August 18, 2015, an IQ test (if necessary), and to review issues raised by the defense experts". Doc. 359. On October 2, 2017, Pilkington filed her notice of appeal from these judgments. Doc. 363. Pilkington raises the following assignment of error on appeal.

> **The trial court erred in granting the State's motion to have [Pilkington] psychologically evaluated and [Pilkington's] compelled participation in the psychological evaluation will violate her rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶5} The sole assignment of error questions whether the trial court erred by requiring Pilkington to submit to a psychological evaluation as requested by the State. Pilkington's argument is that the State's request that she submit to a psychological evaluation would be similar to compelling her to answer questions without counsel and would violate her Sixth Amendment right to counsel and her Fifth Amendment right not to be compelled to offer evidence against herself. Both sides admit that there is no statutory or case law that is directly on point for the facts before us. Thus, we are addressing an issue of first impression.

> **It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other**

> **guarantees of the Sixth Amendment—the right of the accused to a speedy and public trial by an impartial jury, his right to be informed of the nature and cause of the accusation, and his right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution.**

*U.S. v. Wade*, 388 U.S. 218, 226-27, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (footnote of citations omitted). "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Estelle v. Smith*, 451 U.S. 454, 468, 101 S.Ct. 1866, 63 L.Ed.2d 359 (1981). However, "if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan v. Kentucky*, 483 U.S. 402, 422-23, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

{¶6} In an analogous case, the Supreme Court of Ohio has held that when a defendant demonstrates an intention to use expert testimony from a psychiatric examination at trial, the trial court may compel the defendant to submit to an examination by the State's expert. *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075. In *Goff*, the defendant wished to establish an affirmative defense of self-defense by establishing that she suffered from battered-woman

syndrome which caused her to be in fear of imminent danger. *Id.* The Court cited

with approval to *State v. Manning* (74 Ohio App.3d 19, 598 N.E.2d 25 (1991)) in

which the Ninth Appellate District held that "[w]hen a defendant introduces

psychiatric evidence and places her state of mind directly at issue, as here, she can

be compelled to submit to a[n] independent examination by a state psychiatrist."

*Manning* at 24. After reviewing the case law from other jurisdictions, the *Goff* Court

concluded that a court can compel a defendant who has demonstrated an intent to

use expert testimony from a psychiatric examination to submit to another

examination by an expert of the State's choosing. *Goff* at ¶ 58.

> **By putting her mental state directly at issue and introducing expert testimony based upon her own statements to the expert, the defendant opens the door to a limited examination by the state's expert concerning battered-woman syndrome and its effect on the defendant's behavior. Courts have the inherent authority to preserve fairness in the trial process, and allowing the defendant to present expert testimony on the specific effects of battered-woman syndrome on the defendant while denying the prosecution the ability to introduce such evidence would unfairly handicap the prosecution and prevent the trier of fact from making an informed decision.**

*Id.* The Court did require that the evaluation would have to be carefully tailored to

avoid excessive infringement on the defendant's rights. *Id.* at 59. The Court held

that although the trial court could compel the examination, the State could not use

any information gathered outside the strict limitations without violating the

defendant's constitutional rights. *Id.* at ¶ 66. However, at trial, the expert for the

State testified to more than what was allowed, and strayed into using the statements

of the defendant to show that she was not truthful instead of only focusing on battered woman syndrome. Because the expert witness of the State did exceed the limitations, the Court held that the testimony violated the defendant's Fifth Amendment rights, reversed the judgment and remanded the matter for further proceedings. *Id.* at ¶ 67.

{¶7} Although the *Goff* case dealt with issues for trial, not a motion to suppress, the logic of the Supreme Court of Ohio is instructive in this case. Pilkington has raised the issue of her mental state and capabilities to show that her will was overborne by the coercive interviews. By doing so, Pilkington has placed her mental state at issue. The trial court then may, in the interest of fairness, allow the State to have its expert conduct a psychological examination of Pilkington. Any such examination would have to be extremely limited. The trial court clearly considered this requirement by including the limitations that the doctor could not ask any questions about the offenses during the examination. Thus, the trial court did not err in granting the limited examination.

{¶8} Pilkington also raises the issue of what the State can do with any voluntary admissions that might be made by Pilkington during the examination. The United States Supreme Court has recognized the issue with the use of statements from a compelled psychological examination. In *Estelle, supra*, the defendant was compelled to engage in a psychiatric examination to determine his competency to stand trial. During the interview, the defendant was not warned of his right to

remain silent. The State of Texas then tried to use his statements against him during

the penalty phase of the trial. The Court determined that the use of the statements

violated the defendant's Fifth Amendment right against compelled testimony and

his Sixth Amendment right to counsel and revoked the death sentence that had been

imposed. The Court held as follows.

> **Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson to establish his future dangerousness. If, upon being adequately warned, respondent had indicated that he would not answer Dr. Grigson's questions, the validly ordered competency examination nevertheless could have proceeded upon the condition that the results would be applied solely for that purpose. In such circumstances, the proper conduct and use of competency and sanity examinations are not frustrated, but the State must make its case on future dangerousness in some other way.**

*Id*. at 468-469. The Court also found that the use of the statements violated the Sixth

Amendment rights of the defendant.

> **[R]espondent's Sixth Amendment right to counsel clearly had attached when Dr. Grigson examined him at the Dallas County Jail, and their interview proved to be a "critical stage" of the aggregate proceedings against respondent. * * * Defense counsel, however, were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.**
>
> **Because "[a] layman may not be aware of the precise scope, the nuances, and the boundaries of his Fifth Amendment privilege," the assertion of that right "often depends upon legal advise [sic]**

**from someone who is trained and skilled in the subject matter." ***
*** As the Court of Appeals observed, the decision to be made
regarding the proposed psychiatric evaluation is "literally a life
or death matter" and is "difficult * * * even for an attorney"
because it requires a knowledge of what other evidence is
available, of the particular psychiatrist's biases and predilections,
[and] of possible alternative strategies at the sentencing hearing."
*** It follows logically from our precedents that a defendant
should not be forced to resolve such an important issue without
"the guiding hand of counsel."  * * ***

**Therefore, in addition to Fifth Amendment considerations, the
death penalty was improperly imposed on respondent because the
psychiatric examination on which Dr. Grigson testified at the
penalty phase proceeded in violation of respondent's Sixth
Amendment right to the assistance of counsel.**

*Id*. at 470-71 (citations omitted).  The *Estelle* Court required that counsel be notified

in advance of the examination as to what would be covered and be allowed to advise

the client if the State wished to use the information for any purpose besides the

determination of competency to stand trial.

{¶9} Later, the Supreme Court of the United States addressed whether the

State's use of a compelled psychiatric report to rebut a mental status defense

violated the defendant's Fifth or Sixth Amendment Rights.  *Buchanan, supra*.  In

*Buchanan*, the defendant was accused of murder.  Prior to trial, the State and counsel

for defense jointly requested a psychiatric evaluation.  During the trial, the

defendant presented an affirmative defense of extreme emotional disturbance and

presented excerpts from a prior psychological examination in support of the claim.

The State then presented statements from the report from the jointly requested

examination in rebuttal. No statements of the defendant were read to the jury. The Court determined that the "introduction of such a report for this limited rebuttal purpose does not constitute a Fifth Amendment violation." *Id*. at 423-24. The Court also determined that since counsel for the defendant had participated in the request for the examination, counsel was on notice that it might be used in rebuttal. *Id*. at 425. Because of this, the Court found that there was no Sixth Amendment violation. *Id*.

{¶10} As discussed above, the Supreme Court of Ohio has also addressed the issue of the use of a defendant's statements made during a compelled psychological examination. *Goff*, supra. In *Goff*, the Court held that use of the statements for anything outside of the strict limits of the evaluation was impermissible.

> **We conclude that although the trial court did not err in ordering a psychiatric examination of Goff, the examination and subsequent testimony established that Resnick exceeded the boundaries of what was necessary to provide a level playing field between the state and the defense as to expert testimony. Resnick went beyond determining whether Goff suffered from battered – woman syndrome; "his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting." * * * As in *Estelle*, "[t]he fifth Amendment privilege, therefore, is directly involved here because the State used as evidence against respondent the substance of [her] disclosures during the pretrial psychiatric examination," and "the results of that inquiry were used by the State for a much broader objective that was plainly adverse to respondent."**

*Id*. at ¶ 66.

{¶11} Here, Pilkington raises questions about what could happen if she were to make any statements against her interests during the interview as she will not have counsel present to advise her. While this court appreciates the gravity of this possibility, the situation has not yet occurred. Given the guidance of the Supreme Court of the United States and the Supreme Court of Ohio, the issue might never be raised. Thus, at this point in time, there is nothing for this court to review. Any opinion we would release on this issue would merely be advisory. For that reason, we cannot address this issue at this time.

{¶12} Having found that the ordering of an independent psychological evaluation does not violate Pilkington's Fifth or Sixth Amendment rights, the sole assignment of error is overruled. The judgment of the Court of Common Pleas of Logan County is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**