[Cite as *Akron v. Cabell*, 2013-Ohio-5113.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO / CITY OF AKRON | C.A. No. 26603 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PIERRE CABELL | AKRON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 12 CRB 04254 |

DECISION AND JOURNAL ENTRY

Dated: November 20, 2013

WHITMORE, Judge.

{¶1} Defendant-Appellant, Pierre Cabell, appeals from his conviction in the Akron Municipal Court. This Court reverses.

I

{¶2} In early March 2012, Cabell's friend, Gilbert Dickson, came into the possession of a pit bull named "Papa Bear." The dog, who belonged to Donald and Shannon Alexander (collectively, "the Alexanders"), went missing from the Alexanders' fenced yard while they were away from home. After they discovered that Papa Bear was missing and searched the neighborhood for him, the Alexanders created reward posters. On March 9, 2012, Shannon Alexander posted one of the reward posters at the neighborhood convenience store. Approximately fifteen minutes after Shannon left the convenience store, Cabell phoned her to ask about the reward.

{¶3} Over the course of the day, the Alexanders spoke with Cabell and Dickson several times on the phone. Dickson demanded $500 from the Alexanders for the return of Papa Bear and threatened to harm him if they did not cooperate. Worried that Dickson would follow through with his threats, the Alexanders contacted the police. Two police officers spoke to Dickson on the phone, but were unable to resolve the situation. Shannon then arranged to meet with Cabell to exchange the reward money for Papa Bear.

{¶4} When the Alexanders alerted the police to their plan to have Shannon meet with Cabell, the police interceded. A female officer posed as Shannon and waited for Cabell at the arranged location. When Cabell arrived, the police arrested him. Cabell then led the police to Dickson's residence, and the police were able to recover Papa Bear. Dickson was ultimately convicted of obstructing official business, disorderly conduct, and coercion. *See State v. Dickson*, 9th Dist. Summit No. 26609, 2013-Ohio-3511.

{¶5} Cabell was charged with one count of coercion, in violation of Akron Municipal Code ("AMC") 135.08(B)(1).[1] A jury trial was held, and the jury found Cabell guilty of coercion. Subsequently, Cabell filed a motion for acquittal, pursuant to Crim.R. 29(C), and the State filed a response. On July 24, 2012, the trial court overruled Cabell's motion for acquittal. On July 31, 2012, the court sentenced Cabell to six months of probation and a fine, but stayed the sentence so that Cabell could pursue an appeal.

{¶6} Cabell now appeals from his conviction and raises one assignment of error for our review.

---

[1] Cabell also was charged under a different case number with the crimes of receiving stolen property and telephone harassment. All three charges were tried together, but Cabell has only appealed from the coercion charge. Consequently, the record on appeal does not include the file from Cabell's other case. Because Cabell has only appealed from the coercion case, this Court limits its discussion accordingly.

II

Assignment of Error

APPELLANT CABELL'S CONVICTION ON COERCION WAS BASED UPON INSUFFICIENT EVIDENCE AS THE CITY OF AKRON FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT CABELL WAS THE PRINCIPAL OFFENDER, THEREBY VIOLATING HIS RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.

**{¶7}** In his sole assignment of error, Cabell argues that his coercion conviction is based on insufficient evidence because there was no evidence that he ever threatened Papa Bear. He further argues that his conviction cannot be upheld under the theory of complicity because the jury was never instructed on complicity. We agree.

**{¶8}** In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

**{¶9}** AMC 135.08(B)(1) provides, in relevant part, that "[n]o person, with purpose to coerce another into taking or refraining from action concerning which he has a legal freedom of choice, shall * * * [t]hreaten to commit any offense." A "threat" includes "a direct threat and a threat by innuendo." AMC 135.08(A). "A person acts purposely when it is his specific intention

to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." AMC 130.08(A). Whoever commits the foregoing offense is guilty of coercion. AMC 135.08(E).

{¶10} There was no testimony in the court below that Cabell ever threatened Papa Bear. Shannon Alexander testified that she spoke with Cabell on the phone several times and that only another man, not Cabell, threatened Papa Bear. The first time Shannon spoke with Cabell, he simply told her that he thought he had seen her dog and would contact her again to "work out an exchange." Cabell also spoke with Shannon briefly a few other times and later agreed to meet with her in person. Shannon stated that, while the other man on the phone threatened to shoot Papa Bear if the Alexanders did not give him $500, Cabell never threatened to harm Papa Bear.

{¶11} Donald Alexander testified that he received a call from Cabell after Cabell had first spoken with Shannon. The two agreed to meet in person and spoke with each other on the phone several times to arrange the meeting. When the two met, Cabell showed Donald several pictures of Papa Bear on his cell phone to see if the dog actually belonged to the Alexanders. When Donald confirmed the dog was theirs, Cabell indicated that he needed to call Dickson. Cabell then called Dickson and handed his cell phone to Donald. Donald testified that, when he was on the phone with the man Cabell called, the man stated: "You're going to give me $500 or you're not going to see the dog." Donald never testified that Cabell threatened Papa Bear during any of their conversations.

{¶12} Officer Michael Stanar testified that he was dispatched to the Alexanders' house after they reported that their dog had been stolen. The Alexanders gave Officer Stanar the cell phone number that Cabell had used to call them, and Officer Stanar called the number. He

testified that two males spoke to him when he called the number. According to Officer Stanar, the male voice that "sounded like an older male" refused to believe that Officer Stanar was a police officer, yelled at him, cussed at him, and told him: "We want $500. You're never going to see that dog." Officer Stanar later arrested Dickson after Cabell led the police to Dickson's house. Officer Stanar testified that Dickson yelled and cussed during the arrest and that the voice that had yelled, cussed, and threatened Papa Bear on the phone belonged to Dickson. Officer Stanar indicated that he only spoke on the phone with Cabell for a few minutes and that the conversation was limited to Cabell "trying to explain * * * that he put money into the dog, bought it a leash, bowls, [and] got some shots for it * * *."

{¶13} At the close of the State's case, Cabell moved for an acquittal on the basis that there was no evidence he had ever threatened to harm Papa Bear. The State responded that the threat that had been made was a threat to kill Papa Bear. The prosecutor stated:

> [Defense counsel] raised that Mr. Cabell never made that threat. I believe under the revised code a complicity argument can be made. The defense is on notice that it could be the charge of coercion or complicity and that they aided, abetted, encouraged, incited. It was Mr. Cabell's phone that caused these threats to be made. I believe he's just as liable under a complicity argument as Mr. Dickson is in making * * * the threats himself.

The court overruled Cabell's motion, and the defense presented its case. During closing argument, the prosecutor likewise argued:

> Mr. Cabell's phone was used in this. He did aid, encouraged, he helped [Dickson] out. Mr. Dickson is the primary aggressor in this, but Mr. Cabell is helping him out.

Moreover, during the sentencing hearing, the prosecutor stated that he did not "believe [Cabell] was the principle. The evidence * * * said that he was complicit in the actions."

{¶14} Despite the State's repeated arguments that Cabell acted as a complicitor, the State never requested a complicity instruction. The trial court only instructed the jury on the

principal offense of coercion. After Cabell was found guilty, he filed a Crim.R. 29(C) motion for acquittal in which he argued once again that there was no evidence that he had ever threatened Papa Bear. The State filed a response. In its response, the State wrote that the evidence established Dickson was the principal offender, but that "Cabell was legally an accomplice to the crime of Coercion." The trial court overruled Cabell's motion on the basis that the State had proved the elements of coercion.

{¶15} Because there was no evidence that he ever threatened Papa Bear, Cabell argues that his coercion conviction is based on insufficient evidence. The State responds twofold. First, the State argues that there was circumstantial evidence that Cabell engaged in coercion. Second, the State argues that, even though the jury was not instructed on complicity, this Court should uphold Cabell's conviction under the theory of complicity. We reject both of the State's arguments.

{¶16} The State's argument that there is sufficient circumstantial evidence of Cabell's guilt is wholly inconsistent with its position at trial, which was, that Cabell was complicit. Further, there was no evidence that Cabell ever made a "direct threat" or a "threat by innuendo." AMC 135.08(A). The evidence was that there were two male voices on the phone with the Alexanders and the police at various points in time, but only one of the voices threatened Papa Bear. Shannon Alexander specifically agreed that Cabell never threatened to harm the dog. Moreover, both Officer Stanar and his partner, Officer David Rouse, testified that Dickson's voice was the voice that had made the threats on the phone. Having reviewed the record, we must conclude that the State failed to prove that Cabell committed the crime of coercion. *See* AMC 135.08(B)(1) (requiring, as an element, proof that person threatened to commit an offense).

{¶17} As for the State's second argument, this Court has recognized that a defendant may be convicted of complicity to engage in a crime even when the defendant has only been indicted on the principal offense. *See, e.g., State v. White*, 9th Dist. Summit Nos. 23955 & 23959, 2008-Ohio-2432, ¶ 28; *State v. Riley*, 9th Dist. Summit No. 21852, 2004-Ohio-4880, ¶ 33-38. The foregoing rule of law has been applied, however, in cases where the court instructed the jury on complicity. *See White* at ¶ 28; *Riley* at ¶ 33-38. *See also State v. Herring*, 94 Ohio St.3d 246, 251 (2002). No complicity instruction was issued in this case. Moreover, this case did not stem from a bench trial where no such instruction would be necessary. *See In Re Bickley*, 9th Dist. Summit No. 15974, 1993 WL 216273, *1-2 (June 23, 1993).

{¶18} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution denies states the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *State v. Adams*, 74 Ohio App.3d 140, 144 (1991), citing *In Re Winship*, 397 U.S. 358, 364 (1970). At least two of our sister districts have held that "appellate courts cannot consider evidence of a defendant's complicity in a criminal act if the jury was not instructed on complicity since this would violate the defendant's Sixth Amendment right to a jury trial." *State v. Peterson*, 7th Dist. Columbiana No. 06 CO 50, 2007-Ohio-4979, ¶ 23. *Accord State v. Martin*, 4th Dist. Gallia No. 09CA19, 2012-Ohio-1519, ¶ 34-36 (conviction reversed where insufficient evidence of principle offense and jury was not instructed on complicity). We agree with our sister districts. It is axiomatic that a defendant may not be convicted of a crime in a jury trial where the jury was not instructed on that crime. *See State v. Stacy*, 12th Dist. Butler Co. CA2002-03-073, 2003-Ohio-3695, ¶ 6-7; *State v. Smith*, 11th Dist. Portage Co. 1720, 1989 WL 4275, *8-10 (Jan. 20, 1989). Because the

jury here was never instructed on complicity, Cabell cannot be guilty of complicity to commit coercion.

{¶19} We agree with Cabell that his coercion conviction is based on insufficient evidence. Although there was evidence that might have supported a theory of complicity, the State never requested a complicity instruction and the jury was never given one. As such, the trial court's judgment must be reversed and Cabell's conviction for coercion must be vacated. *See Peterson* at ¶ 35. *Compare State v. Frost*, 164 Ohio App.3d 61, 2005-Ohio-5510 (2d Dist.) (new trial ordered when court refused to give complicity instruction at State's request and jury convicted on insufficient evidence of principle offense). Cabell's sole assignment of error is sustained.

### III

{¶20} Cabell's sole assignment of error is sustained, and his coercion conviction is vacated pursuant to that determination. The judgment of the Akron Municipal Court is reversed.

Judgment reversed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
BETH WHITMORE
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

GERTRUDE WILMS, Chief City of Akron Prosecuor, and THOMAS D. BOWN, Assistant City of Akron Prosecutor, for Appellant.

LORI A. CURD, Appellate Review Office, School of Law, The University of Akron, for Appellee.