THE STATE OF OHIO, APPELLEE, *v.* BYRD, APPELLANT.

(No. 52209—Decided March 30, 1987.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Thomas M. Shaughnessy,* for appellant Michael Byrd.

MARKUS, C.J. The defendant appeals from his jury trial conviction for felonious assault with a penalty enhancing firearm specification. He complains that the court (a) denied his counsel's request to examine a writing which refreshed a witness's recollection before testifying, and (b) accepted a verdict contrary to the manifest weight of the evidence. His contentions lack merit, so we affirm the trial court's judgment.

I

The state charged that the defendant was a patron who shot at the victim in a bar owned by the victim. The victim testified that a patron reported a scuffle in the men's restroom of his bar at approximately 9:00 p.m. He entered the restroom and stopped a fight between the defendant and another bar patron. The defendant then engaged the victim in an argument. The two men exchanged blows until other patrons separated them, and the victim directed the defendant to leave his bar.

Approximately twenty minutes later, the defendant returned. A barmaid testified that she saw the defendant enter the front door with a pistol in his hand, so she shouted a warning. The defendant immediately began shooting toward the victim and others seated with him at a small table. He fired four shots as he moved in the barroom. One shot struck the table. The victim threw a chair at the defendant and ran out a rear door, while other occupants sought cover.

Before leaving the bar, the defendant turned to face the barmaid and another bar employee. Outside the bar, the defendant threatened another bar patron who had witnessed the shooting. That patron also testified at the trial. The barmaid called the police, and they arrived in a few minutes. The first officer testified that he saw an apparently new bullet hole in the table and a second bullet hole in the back wall. The victim gave the second officer a bullet pellet he recovered after the shooting. This officer arrested the

defendant two weeks later, after repeated visits to the defendant's home.

The defendant testified on his own behalf. He acknowledged being a participant in fights with a bar patron and the victim that evening, but denied being the aggressor in either fight. He stated that he left the bar after other patrons stopped the second fight, and did not return there that evening.

The defendant said that he went to his mother's home, where he remained for several days while she treated his injuries from the bar fights. He denied shooting at the victim or even owning a handgun. He claimed that the victim and the victim's friends invented the shooting after the defendant threatened to sue or summon police about his own injuries.

## II

The defendant first complains that the court refused to allow his counsel to examine a writing which a witness used to refresh his recollection, pursuant to Evid. R. 612. He does not rely upon Crim. R. 16(B)(1)(g), so we will not discuss its significance here. Evid. R. 612 provides, in pertinent part:

" * * * [I]f a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. * * *"

Thus, an adverse party has an absolute right to examine a writing which a witness uses to refresh his or her recollection *while testifying*. See Staff Note to Evid. R. 612; Graham, Evidence, Text, Rules, Illustrations and Problems (1983) 67. However, the rule affords the adverse party less access to a writing which a witness used to refresh recollection *before testifying*. The right to obtain and use such a writing results only if "the court in its discretion determines it is necessary in the interests of justice." Evid. R. 612; *State* v. *Cummings* (1985), 23 Ohio App. 3d 40, 45, 23 OBR 84, 88-89, 491 N.E. 2d 354, 359.

An adverse party may seek the materials which a witness used (a) to challenge the accuracy of those materials, or (b) to challenge the witness's resulting recollection. If the witness relies upon materials which are inaccurate or misleading, the resulting testimony can be less believable. *United States* v. *Rappy* (C.A. 2, 1946), 157 F. 2d 964, 967-968. If the witness recites information differently from material upon which the witness relied, the witness's memory may be more vulnerable. *Id.; United States* v. *Riccardi* (C.A. 3, 1949), 174 F. 2d 883, 888. McCormick, Evidence (3 Ed. Cleary Ed. 1984) 17, 20, Section 9.

Thus, the significance of such materials may depend upon the degree to which the witness relied on them to refresh recollection. At the same time, litigation practicalities preclude the production of everything which may have triggered some part of a witness's recollection. See *Jewett* v. *United States* (C.A. 9, 1926), 15 F. 2d 955, 956; *United States* v. *Rappy, supra.* A witness may recall some details without any assistance, but innumerable stimuli could have increased the witness's recall of other details. Indeed, the witness might not recognize or recall some stimuli which increased that recollection.

Reliance is clearly greater when the witness uses that mental crutch during testimony than before beginning to testify. Further, a court can more easily regulate the production and use of a writing that is physically present than most other types of stim-

uli. Hence, Evid. R. 612 requires the production of writings actually used to refresh recollection during testimony. The rule gives the court discretion whether to require production of writings used to refresh recollection earlier. Indeed, the court may even have discretion to require the production of non-written memory stimuli, whether used during the trial or earlier.

In exercising its discretion whether to require the production of a writing which a witness reviewed before testifying, the court should consider (a) the apparent extent of the witness's reliance on that writing, (b) the significance of the data recalled by that reliance, (c) any resulting burden on another party, and (d) any potential disruption of orderly proceedings.

The witness's testimony about the writing and the time that passed since the witness viewed it often disclose the degree of reliance. Testimony about less central issues have less significance, so reliance on a writing to recall that data has equivalently less significance. An order to produce less accessible writings can delay the trial unnecessarily or impose an unreasonable burden on the party who must search for them.

In this case, the defendant complains that the court declined to require the production of a police report which an officer reviewed at some undetermined time before testifying. The following testimony provided defense counsel's entire foundation for his request:

"Q.  Incidentally, before you testified here today, did you read that report to refresh or bring into sharp focus your memory of what happened?

"A.  I did.

"Q.  Was the report helpful in refreshing your memory?

"A.  Yes, it was.

"* * *

"Q.  Anyway, Officer, you said you filled in a report, and what you filled in is typed by a computer, isn't it?

"A.  Yes.

"Q.  And one of these fellows, either the detective or the lawyer here, let you look at that report before you testified?

"A.  Sure.

"Q.  All right, and in that report, undoubtedly, there is information, although you didn't look at the hole to see if the bullet was there or went all the way through, there were jagged edges which in your mind suggested it might be recent?

"A.  Yes.

"Q.  And this information is in the report?

"A.  I don't recall reading it today."

The defense sought the report to contest the officer's observation that the bullet hole in the table appeared to be new. However, the officer testified freely about that observation, without any seeming reliance on the earlier report. The defense offered no contrary evidence about the appearance of the bullet hole, even though other witnesses said they were present.

The prosecutor apparently represented to the court that he did not have the described report or know its location. The court declined to order a search which could interfere with "an expeditious trial." In view of the relatively low reliance demonstrated and the relatively non-central data involved, the court did not abuse its discretion by that ruling. Thus, we reject the first assignment of error.

### III

The defendant's second assigned error challenges the verdict as contrary to the manifest weight of the evidence. That contention lacks merit. The state presented three witnesses who said they saw the defendant fire

the shots at the bar owner. Any inconsistencies between their respective versions of the events were not so significant as to make their testimony fundamentally incredible. Cf. *State* v. *Mattison* (1985), 23 Ohio App. 3d 10, 15, 23 OBR 43, 47-48, 490 N.E. 2d 926, 930.

The defendant's uncorroborated testimony did not require the jury to accept his claim that he was at his mother's home then. This court should not reverse a jury verdict that has support from substantial competent credible evidence. We overrule the defendant's second assignment of error and affirm his conviction.

*Judgment affirmed.*

DYKE and JACKSON, JJ., concur.

JAMES JACKSON, J., of the Court of Common Pleas of Lake County, sitting by assignment in the Eighth Appellate District.