A jury found defendant Edward Kimmie guilty of four counts of rape, one count of kidnapping, one count of intimidation and one count of tampering with evidence. In this appeal, he complains about the courts decision to exclude him from inquiring about the victims past sexual activity, the courts refusal to permit him to examine a police report used by a witness to refresh a recollection, and the courts decision to sentence him to maximum terms on individual counts.
The states evidence showed that the victim knew defendant for about ten days before he committed the rape. Defendant befriended her by offering her and her two-year-old son a late-night ride at a bus shelter. Over the next few days defendant gave her a few rides to work, and visited her apartment.
On the afternoon of the rapes, the victim and defendant watched a television program devoted to sexual assault victims confronting their attackers. When the program ended, defendant grabbed the victim from behind by placing his arm around her neck. He told her to remove her clothes. The victim complied because defendants arm-hold was choking her. Defendant forced the victim to perform oral sex on him, and then he performed oral sex on her. They then engaged in mutual oral sex. Defendant finished by engaging in intercourse.
After ejaculating, defendant ordered the victim to douche as a means of removing evidence of his semen. He told the victim not to call the police, and threatened to kill her and her son and "blow the house up" if she did.
Defendant departed the premises and the victim spoke to her cousin, who in turn told her to call the police. The victim did so, and the police took her to the hospital. Vaginal swabs were obtained that tested positive for the presence of semen. The police also took photographs of the victims neck that showed red marks around her neck.
Defendant did not present any defense.
 I
The first assignment of error complains the court erred by refusing to permit defendant from cross-examining the victim about her past sexual activity. Defendant knew the hospital records showed the victim had contracted trichomonas, a sexually transmitted disease manifesting itself as a vaginal infection. Defendant apparently did not have, the disease and wished to inquire about the victims past sexual activity to suggest that he was not the individual who had sexual relations with the victim.
Ordinarily, evidence of specific instances of the victims sexual activity is not admissible. See R.C. 2907.02(D). An exception exists if the accused can show that the victims past sexual reputation or activity is necessary to prove the origin of semen, pregnancy, disease or past sexual history with defendant. Even then, the court may exclude such evidence if the court finds that it is irrelevant or is prejudicial. State v. Guthrie (1983),86 Ohio App.3d 465, 467.
Defendant does not clearly articulate the reasons why he should have been permitted to inquire about the victims past sexual activity as a means of discovering how she contracted her sexually transmitted disease, and we fail to see how it would have been relevant under the circumstances. He appears to argue that he could not have been the assailant since he did not have any sexually transmitted disease. This argument assumes one of two things either the victim contracted her sexually transmitted disease as a result of the rape or defendant should have contracted the disease if he had sexual intercourse with the victim. These assumptions can be assailed on any number of grounds, but even if true, the victims preexisting sexually transmitted disease has nothing to do with the issue whether he forced sex on the victim as charged in the indictments. Even had the victim been sexually active with other partners, that fact would prove nothing. SeeState v. Sowards (July 12, 1996), Scioto App. No. 90 CA 1923, unreported. The disease exception to R.C. 2907.02(D) does not permit fishing expeditions an accused cannot, without more, raise irrelevant issues relating to the victims sexually transmitted disease without making some showing of relevancy. Since no relevancy had been shown in this case, the court did not abuse its discretion by refusing to permit defendant to question the victim. The first assignment of error is overruled.
 II
In his second assignment of error, defendant complains that the court erred by refusing to examine in camera the contents of a police report that a testifying officer reviewed prior to testifying. Defendant argues there may have been exculpatory material in the police report so the court should have conducted an independent examination.[1]
Evid.R. 612 provides:
 Except as otherwise provided in criminal proceedings by Rules 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.
In State v. Byrd (1987), 35 Ohio App.3d 100, 101, we stated:
 * * * an adverse party has an absolute right to examine a writing which a witness uses to refresh his or her recollection while testifying. However, the rule affords the adverse party less access to a writing which a witness used to refresh recollection before testifying. The right to obtain and use such a writing results only of "the court in its discretion determines it is necessary in the interests of justice." (emphasis sic) (citations omitted).
Hence, when a document is used to refresh the witnesss recollection before testifying at trial, as opposed to during trial testimony, the document is subject to production at the trial judges discretion. State v. Wayt (1992), 83 Ohio App.3d 848, 858.
The record does not show that the court conducted an in camera review of the police report at the time defendant asked to approach the bench. However, our independent review of the police report shows it contains nothing exculpatory nor inconsistent with the victims own statement and testimony at trial, and defendant makes no specific argument in this respect. Thus, even if we assume the court erred by refusing to make a contemporaneous in camera inspection of the police report at the time defendant asked to examine it, that error would be harmless beyond a reasonable doubt. The second assignment of error is overruled.
 III
The third assignment of error complains the court erred by refusing to permit defendant to ask a police officer if any blood samples had been obtained from defendant. The court sustained the states objection out of fear that it might expose the jury to information relating to another criminal case involving defendant.[2]
Defendant now claims this question would have been relevant to show that he was not the source of the semen found in the victim.
Because this assignment implicates an evidentiary ruling, we review the courts actions for an abuse of discretion. State v.Tinch (1992), 84 Ohio App.3d 111, 127. If the decision of the trial court appears to be reasonable, a reviewing court may not reverse the judgement, even if the reviewing court would have reached a different conclusion. State v. Snowden (1982), 7 Ohio App.3d 358,361.
Ordinarily, an accused would be permitted to ask if the police conducted a blood test to determine who had been the source of the semen, just like a person accused of burglary could ask if police had taken any fingerprints at the scene of the crime. It appears the court initially refused to permit defendant to ask whether blood tests had been conducted because it "didn't want to open the door as to the reason why blood was taken from this defendant, because it related to another crime relating to the stalking of a young woman's apartment that he broke into, which is why I didn't permit the question to be gotten into." Upon representations from defense counsel that blood tests would show defendant was not the assailant, the court offered to recess the trial and permit blood tests, but cautioned defendant that the results would go to the jury. Defense counsel replied, "we wont make that request."
Once it became clear that defendant only wished to ask whether the police routinely took blood samples from persons accused of rape, the courts reluctance to allow the question (however well founded under the circumstances) should have disappeared. Unfortunately, by the time the court permitted defendant to place the reasons for his objection on the record, the moment to ask the question had passed. We must determine, on the record, whether this error prejudiced defendant. Defendant does not make any specific argument that his failure to ask the police about their procedure for taking blood samples prejudiced his defense other than to say that it might have been a factor in the jury's determination of whether the state met its burden of proof. We have reviewed the record and find any error to be harmless. The victim gave a very positive identification because she knew defendant prior to the attack. Her testimony at trial closely matched the version of the rape she gave to the police. The physical evidence showed the presence of semen and marks around her neck corroborated her claim that defendant grabbed her by the neck. With the presence of all this evidence, we do not believe any jury would have been swayed by a police officers testimony that the police did not take a blood sample from defendant. The third assignment of error is overruled.
 IV
For his fourth assignment of error, defendant complains the court erred by sentencing him to the maximum sentence on all counts without first determining that he committed the worst form of the offense. Defendant complains the court failed to order a presentence report that might have given the court more information before sentencing.
R.C. 2929.14(C) states:
 (C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
The relevant sections of R.C. 2929.14(C) for imposing the maximum prison sentence in this case are that defendant committed the worst form of the offense or posed the greatest likelihood for committing future crimes. To impose the maximum sentence, there must be a finding on the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. See State v. Banks (Nov. 20. 1997), Cuyahoga App. No. 72121, unreported; State v. Beasley (June 11, 1998), Cuyahoga App. No. 72853, unreported. We do not require the court to utter any "magic" or "talismanic" words, but it must be clear from the record that the court made the required findings. See State v. Stribling
(Dec. 10, 1998), Cuyahoga App. No. 74715, unreported.[3]
Defendant complains that the court failed to give sentencing careful thought, primarily because it failed to order a presentence report before sentencing him to the maximum term. We note that defendant did not object to the courts failure to have a presentence report prepared and, in fact, told the court "I think you have enough facts before you in order to make your call in this." Defense counsels statement constitutes a waiver of the right to bring this assignment of error.
In any event, even had defendant made a proper objection, the court began sentencing proceedings by noting:
 I think it was two months ago, Mr. Kimmie, that you stood before me for sentencing with regard to your other case. At that time I had an opportunity to review your prior record and for sentencing in this matter I would like to indicate for the record your criminal history, at least as far as the felony level goes.
The court went on to detail defendants extensive criminal history: attempted theft, failure to appear for trial, theft, drug abuse, possessing criminal tools, grand theft, burglary, felonious assault, intimidation. Defendants most recent case, tried before the same trial judge, involved his burglary in the home of his former supervisor in a county-run juvenile offenders program. The court stated "I do feel comfortable proceeding. I have had an opportunity to examine the defendants background, not only with regard to the materials that are in this case, but with regard to the earlier case number."
The courts recitation of defendants long-criminal record, along with its statement that "the citizens of the State of Ohio would be well served in having you warehoused away from them for as long as possible," clearly indicates the court believed that defendant posed the greatest likelihood of recidivism. We find the record more than justifies this statement. The fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendants conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J.
MICHAEL J. CORRIGAN, J., CONCUR.
PRESIDING JUDGE, JOHN T PATTON
N.E. This entry is an announcement of the courts decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the courts decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this courts announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1)
[1] The state argues defendant waived the right to raise this assignment of error because defendant did not make a contemporaneous request for the officers police report at the close of his testimony. The record shows otherwise. After asking if the police officer reviewed his report before testifying, defendant asked the court if he could approach the bench. The court refused and defendant stated, "[r]eserve the right to make a proffer." Later, the court noted it declined to permit defendant to examine the report and allowed defendant to "note your exception for the record." This adequately preserved the error for review.
[2] In State v. Kimmie (July 2, 1998), Cuyahoga App. No. 72904, unreported, the evidence showed the police had gathered blood samples that matched Kimmie's. The court in the present case may have believed the officer would consider defense counsels questions as a reference to the blood samples taken in defendants earlier case, and any answer relating to the earlier criminal case might have been construed as a reference to defendants prior criminal activity; hence, the courts decision to sustain an objection.
[3] We recognize that this court reversed a maximum sentence by the court in defendants earlier case, but apparently did so on the grounds that the court failed to state that defendant had committed the "worst" form of the offense as described by the factors listed in R.C. 2929.12(B). As the case law cited indicates, however, this court does not require the court to use the exact language of the statute, so we find State v. Kimmie,supra, has no precedential effect here.