[Cite as *State v. Walters*, 2022-Ohio-3645.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|     Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2022 CA 00006 |
| CLIFFORD WALTERS | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 2019 CR 00621


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      October 7, 2022


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

KYLE STONE      KAREN OAKLEY
PROSECUTING ATTORNEY      LAW OFFICE OF KAREN OAKLEY
TIMOTHY YAHNER      P. O. ox 541111
ASSISTANT PROSECUTOR      Cincinnati, Ohio  45454
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1} Appellant Clifford Walters appeals his conviction on two counts of aggravated murder, one count of murder, one count of aggravated burglary, and one count of felonious assault, all with firearm specifications and repeat violent offender specifications, one count of having weapons under disability and one count of trespassing, entered in the Stark County Court of Common Pleas following a jury trial.

{¶2} Appellee is the state of Ohio.

## STATEMENT OF THE FACTS

{¶3} For purposes of this Opinion, the relevant facts and procedural history are as follows:

{¶4} On April 2, 2019, the Stark County grand jury indicted Appellant Clifford Walters with one count of murder in violation of R.C. §2903.02(B), with a firearm specification pursuant to R.C. §2941.145; one count of aggravated burglary in violation of R.C. §2911.11(A)(2), with a firearm specification pursuant to R.C. §2941.145; and one count of felonious assault in violation of R.C. §2903.11(A)(2), with a firearm specification pursuant to R.C. §2941.145. Walters, through counsel, entered a plea of not guilty. Also, through counsel, Walters waived his right to a speedy trial.

{¶5} On September 24, 2020, the Stark County grand jury indicted Walters through a superseding indictment with two counts of aggravated murder in violation of R.C. §2903.01, with a firearm specification pursuant to R.C. §2941.145 and a repeat violent offender specification pursuant to R.C. §2941.149; one count of murder in violation of R.C. §2903.02(B), with a firearm specification pursuant to R.C. §2941.145 and a repeat violent offender specification pursuant to R.C. §2941.149; one count of aggravated

burglary in violation of R.C. §2911.11(A)(2), with a firearm specification pursuant to R.C. 2941.145 and a repeat violent offender specification pursuant to R.C. §2941.149; one count of felonious assault in violation of R.C. §2903.11(A)(2), with a firearm specification pursuant to R.C. §2941.145 and a repeat violent offender specification pursuant to R.C. §2941.149; one count of having weapons under disability in violation of R.C. 2923.13(A)(2)/(3); and one count of trespassing in violation of R.C. §2911.12(B).

{¶6} On December 13, 2021, the matter proceeded to a jury trial in the Stark County Court of Common Pleas. A mistrial was declared upon the improper mention of "other acts" evidence. (Transcript, 12/13/21 at 246).

{¶7} A second jury trial began on December 14, 2021.

{¶8} At trial, the following testimony and evidence was presented to the jury:

{¶9} F.B. testified that on September 11, 2018, she was living in a Lake township residence with her two small children and her boyfriend B.L. (T. Vol. 1 at 129, 132). That evening, after 1:00 a.m., F.B. and B.L. were in bed when they heard something drop in the kitchen. (T. Vol. 1 at 143). F.B. was concerned and asked B.L. to investigate. (T. Vol. 1 at 143). B.L. got up, put on his glasses, retrieved his gun, and walked down the hall to investigate. (T. Vol. 1 at 144). F.B. then heard shots fired from inside the home. (T. Vol. 1 at 144). She jumped up to go to the door and heard B.L. say her name. (T. Vol. 1 at 144). When she opened the door, she saw someone with a mask so she closed the door and went to grab her phone. (T. Vol. 1 at 144).

{¶10} The intruder had on a black ski mask and wore latex gloves. (T. Vol. 1 at 148). Through the opening of his mask, F.B. could see he was bleeding around the eye. (T. Vol. 1 at 148). The intruder was holding a gun, which he was wiping off on his

sweatshirt. (T. Vol. 1 at 144-145). The gun, a .40 caliber Smith and Wesson semiautomatic handgun, belonged to B.L. (T. Vol. 1 at 145, T. Vol. 2 at 11). By the time F.B. called 9-1-1, the intruder reached the room and took her phone out of her hand. (T. Vol. 1 at 144-145). He had to set the gun down to do so, placing it on top of the bedroom dresser. *Id.*

{¶11} The intruder then demanded F.B. to give him B.L.'s money. (T. Vol. 1 at 145). B.L. was a gang-affiliated drug dealer. (T. Vol. 1 at 140). F.B. told the intruder there was no money at her house, but that B.L. had another home nearby where he kept his money. (T. Vol. 1 at 145-146). As the intruder continued to demand money, F.B.'s son came out of his room. (T. Vol. 1 at 146). She grabbed her son, woke her daughter, and put them both in the closet. (T. Vol. 1 at146). F.B. told the intruder the police were coming. (T. Vol. 1 at 147). The intruder grabbed money out of B.L.'s pants pocket and left. (T. Vol. 1 at 147). He left the victim's weapon behind on top of the dresser. (T. Vol. 1 at 214). F.B. took her children to a neighbor's house and asked them to call the police. (T. Vol. 1 at 149-150).

{¶12} When F.B. managed to call 9-1-1 before the shooter took her phone away, she did not have a chance to say anything to the dispatcher. (T. Vol. 1 at 144-145). However, dispatchers heard voices in the background and dispatched units to the location of the call. (T. Vol. 1 at 130). Sergeant William Konic, Jr. of the Stark County Sheriff's Office was the first on scene. *Id.* As Sgt. Konic and his subordinates secured the residence, he found B.L. lying in the hallway, apparently deceased. (T. Vol. 1 at 130-131). First responders from the fire department pronounced B.L. dead on scene. (T. Vol. 1 at 131).

{¶13} Detective Craig Kennedy of the Stark County Sheriff's Office investigated the homicide, arriving at the scene about 2:00 a.m. (T. Vol. 1 at 204-205). Officers at the scene discovered that the shooter had entered the kitchen by propping a chair next to the kitchen window, standing on it, and cutting the window screen. (T. Vol. 1 at 153, 220). They also found two .40 caliber shell casings in the living room near the victim and a 5.71 mm shell casing in the kitchen. (T. Vol. 1 at 208-210). On top of the bedroom dresser, they recovered the victim's .40 caliber Smith and Wesson semiautomatic handgun, which had what appeared to be blood on it. (T. Vol. 1 at .214, 217-219; T. Vol. 2 at 11).

{¶14} On September 13, 2018, Det. Kennedy attended the victim's autopsy, performed by Dr. Anthony Bertin of the Stark County Coroner's Office. (T. Vol. 1 at 223, 284). The fatal bullet went straight through B.L.'s body, entering through his right shoulder and exiting through the left arm. (T. Vol. 1 at 225, 288). No projectile was recovered from the body. *Id.* The fatal bullet went through the victim's right lung and then his aorta before exiting the body on the left side. (T. Vol. 1 at 288). Based on the entrance wound and the victim's injuries, Dr. Bertin opined that the fatal bullet was a small caliber, high velocity round (such as the 5.71 mm recovered at the scene), and Det. Kennedy concurred. (T. Vol. 1 at 224-225, 290-291). Dr. Bertin found the cause of death was homicide by gunshot wound. (T. Vol.1 at 292).

{¶15} The murder weapon was never definitively identified. (T. Vol. 1 at 243-244). Det. Kennedy learned of a 5.71 handgun found in an abandoned vehicle. (T. Vol. 1 at 244). The gun was entered into a database and then destroyed so Det. Kennedy was unable to retrieve the weapon for testing. *Id.*

**{¶16}** Det. Kennedy sent the bloody .40 handgun to the BCI crime lab for DNA testing on September 11, 2018. (T. Vol. 1 at 219). Because ballistics testing could destroy any DNA which might be present on the gun, no such testing was performed until after the DNA testing was completed. (T. Vol.1 at 219-220).

**{¶17}** Detective Kennedy testified that on September 28, 2018, he was contacted by Lindsey Nelson-Rausch, forensic scientist for the BCI, who informed him that he matched the DNA on the grip, trigger guard, and barrel of the victim's .40 handgun with Appellant Clifford Walters' DNA standard. (T. Vol. 1 at 228, T. Vol. 2 at 41, 46). The DNA profile from the gun was rarer than 1 in a trillion, and matched Walters' sample. (T. Vol. 1 at 47).

**{¶18}** Based on the DNA match, Det. Kennedy began to research Walters in law enforcement databases. (T. Vol. 1 at 229-230). Although Det. Kennedy's database searches uncovered no connection between Walters and B.L. or F.B., he was contacted by Akron police Sergeant Keith Meadows, who became aware of Det. Kennedy's search of the database. T. Vol. 1 at 230.

**{¶19}** Det. Meadows testified that he had run an Ohio Law Enforcement Gateway (OHLEG) inquiry on Walters and was able to see that Det. Kennedy had run the same search. (T. Vol. 1 at 264). Sgt. Meadows was familiar with Walters and had met with him on September 13, 2018, two days after the murder. (T. Vol. 1 at 265). During their meeting, Sgt. Meadows observed Walters had a facial injury and was wearing sunglasses. (T. Vol. 1 at 266). Walters ominously remarked, "[you] should see the other guy." (T. Vol. 1 at 276).

**{¶20}** Walters met with Sgt. Meadows again on September 25, 2018. (T. Vol. 1 at 266-267). At that time, Walters told Sgt. Meadows that he had information on a shooting but first wanted immunity. (T. Vol. 1 at 267-268). Sgt. Meadows was not able to offer immunity and told Walters so. (T. Vol. 1 at 268).

**{¶21}** Sgt. Meadows provided Det. Kennedy with notes containing cell phone numbers and other contact information for Walters and his associates. (T. Vol. 1 at 230-231). Det. Kennedy obtained search warrants for the cell phone data for those phone numbers. (T. Vol. 1 at 231). Of particular interest was Walters' last known telephone number. (T. Vol. 1 at 231-232). Det. Kennedy provided the subpoenaed cell phone records to Agent Jacob Kunkle of the FBI. (T. Vol. 1 at 232).

**{¶22}** Agt. Kunkle testified that he is a specialist in "determining the location of cell phones when they make or receive communications." (T. Vol. 2 at 51). His analysis placed Walters' phone near B.L.'s home at the time of the murder. On September 10, 2018, between 10:12 P.M. and 11:12 P.M., Walters' cell phone used two different cell towers on the western side of Akron. (T. Vol. 2 at 63). Later that evening, Walters' phone used a cell tower in the North Canton area near B.L.'s home. *Id.* Between 1:01 A.M. and 2:31 A.M. on September 11, 2018, the cell phone used towers in the North Canton area, then moved back to using towers in the Akron area. (T. Vol. 2 at 64).

**{¶23}** Larry Mackey of the Stark County Crime Laboratory testified that he tested the .40 caliber Smith and Wesson pistol. (T. Vol. 2 at 11). Both .40 cases recovered from the scene were fired from the victim's .40 Smith and Wesson. (T. Vol. 2 at 16). Mackey testified that it was his opinion that the victim's gun had jammed, although he was unable to determine why. (T. Vol. 2 at 30-34). Mackey also examined the 5.71 mm casing and

ran photographs into another law enforcement database called the National Integrated Ballistic Information Network (NIBIN). (T. Vol. 2 at 19-20). The search resulted in a "hit", indicating that the weapon was possibly involved in multiple shootings. (T. Vol. 2 at 19-21). Mackey opined that a 5.71 mm round is a smaller, high-velocity round. (T. Vol. 2 at 27).

**{¶24}** At the close of the state's case, Appellant moved for acquittal pursuant to Crim.R. 29. (T. Vol. 2 at 75). The trial court denied the motion. (T. Vol. 2 at 76).

**{¶25}** Defense counsel did not present any witnesses.

**{¶26}** On December 15, 2021, the jury returned guilty verdicts on Counts One through Five and Count Seven, along with the attendant firearm specifications. (T. Vol. 2 at 167-172).[1]

**{¶27}** On December 27, 2021, the trial court proceeded to sentencing. By Judgment Entry filed January, 3, 2022, the trial court found Appellant guilty of Count Six - Having Weapons Under Disability, as he stipulated to a prior 2003 Summit County conviction in case number CR 02 01 0195. The trial court also found Appellant guilty of the repeat violent offender specifications. Counts One thru Five and Seven were merged into Count One for purposes of sentencing, with Appellant being sentenced to a mandatory prison term of between thirty (30) years and life on Count One. A consecutive mandatory three-year term of incarceration was issued for the firearm specification on Count One. A mandatory consecutive six-year term of incarceration was issued for the repeat violent offender specification as to Count One. A consecutive three-year term of

---

[1] Prior to trial Appellant waived his right to a jury trial on Count Six – Having Weapons While Under Disability.

incarceration was issued on Count Six. The total sentence was determined to be between forty-two (42) years and life incarceration.

**{¶28}** Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

**{¶29}** "I. THE TRIAL COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BASED UPON INSUFFICIENT EVIDENCE TO CONVICT.

**{¶30}** "II. THE COURT COMMITTED PLAIN ERROR BY NOT CONDUCTING AN IN-CAMERA INTERVIEW OF OFFICER MEADOWS NOTES REGARDING HIS MEETINGS WITH THE APPELLANT. THEREBY DENYING THE APPELLANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

**I.**

**{¶31}** In his first assignment of error, Appellant argues his convictions are not supported by the sufficiency of the evidence. We disagree.

**{¶32}** A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue*, 5th Dist. Stark No. 2001CA00250, 2002-Ohio-351, 2002 WL 121851, *citing State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724; *State v. Miley*, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996). Crim.R. 29(A) allows a trial court to enter a judgment of acquittal when the state's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim.R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the state, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a

reasonable doubt. *State v. Franklin*, 5th Dist. Stark No. 2007-CA-00022, 2007-Ohio-4649, 2007 WL 2596150 at ¶ 12, citing *State v. Dennis*, 79 Ohio St.3d 421, 683 N.E.2d 1096.

**{¶33}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶34}** Appellant herein was convicted of two counts of aggravated felony murder, felony murder, aggravated burglary, felonious assault, having weapons while under a disability and trespassing in a habitation when a person is present or likely to be present.

**{¶35}** With regard to the elements of each offense, Appellant herein argues that the evidence presented at trial failed to show that he was present at the crime scene.

**{¶36}** Upon review, we find that at trial the jury heard testimony from several witnesses placing Appellant at the scene of the crime, including testimony as to his DNA being present on victim's gun, which was carried upstairs by the shooter and placed on the bedroom dresser; testimony regarding cell phone tower data which placed Appellant in the vicinity of the victim's home at the time of the murder; and, testimony by F.B. and Sgt. Meadows that Appellant had a wound near his eye.

**{¶37}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and

credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44, 595 N.E.2d 915. It is to be given the same weight and deference as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶38}** In light of the foregoing, we find the testimony and evidence presented by the State provides sufficient evidence demonstrating that Appellant was present at the scene and that he did commit the offenses charged, including the aggravated murder of B.L.

**{¶39}** Appellant's first assignment of error is overruled.

**II.**

**{¶40}** In his second assignment of error, Appellant argues the trial court erred in not conducting an *in camera* review of Sgt. Keith Meadows' notes. We disagree.

**{¶41}** Initially, we note that Appellant never requested an *in camera* review of the sergeant's notes. As such, we review the matter under the plain error standard of review. Under the plain error rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule places the following limitations on a reviewing court's determination to correct an error despite the absence of timely objections at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is an error that constitutes

"an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Wood*, 5th Dist. Knox No. 20CA000010, 2020-Ohio-4251, 2020 WL 5092841, ¶ 18 citing *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, 2009 WL 943968, ¶ 89, citing *State v. Morales*, 10th Dist. Franklin Nos. 03-AP-318, 2004-Ohio-3391, 2004 WL 1446117, ¶ 19.

**{¶42}** Appellant argues that pursuant to Evid.R. 612 the trial court erred in not *sua sponte* reviewing Sgt. Meadows' notes of his meeting with Appellant.

**{¶43}** Evid.R. 612 provides

If a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

**{¶44}** The above rule states that where the recollection of a witness is refreshed through the use of a document, the document is to be made available to adverse counsel. The rule requires production to adverse counsel when the document is actually used during testimony at trial in an effort to refresh the witness' recollection. *State v. Byrd* (1987), 35 Ohio App.3d 100, 519 N.E.2d 852. However, where the document is used to refresh recollection before testifying, the document is subject to production in the discretion of the trial judge. *Id.*

**{¶45}** Upon review, we find nothing in the record to indicate that Sgt. Meadows consulted his notes prior to testifying or during his testimony before the jury. It is unclear as to whether he even had his notes with him at trial. At no time did either side make any attempt to refresh the sergeant's recollection.

**{¶46}** Based on the foregoing, we find that Evid.R. 612 is inapplicable in the present case as Appellant has failed to establish that Sgt. Meadows used a writing to refresh his memory at any time before or during his testimony.

**{¶47}** Appellant's second assignment of error is overruled.

**{¶48}** For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/kw 0930